Sheri Pan (SBN 316136)
sheri@zwillgen.com
ZWILLGEN LAW LLP
369 Pine Street, Suite 506
San Francisco, CA 94104
Telephone: (415) 230-5941

*Attorney for Defendants*
*NBCUniversal Media, LLC and*
*Universal Pictures Home Entertainment LLC*
*d/b/a GRUV.com*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MICHAEL ARCHER; and TODD COHN, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

NBCUNIVERAL MEDIA, LLC and UNIVERSAL PICTURES HOME ENTERTAINMENT d/b/a GRUV.COM,

Defendants.

Case No. 2:24-CV-10744-AB-JC

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT UNDER FED. R. CIV. P. 12(b)(6); AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Date: April 4, 2025
Time: 10:00 a.m.
Judge: Hon. André Birotte Jr.
Courtroom: 7B
Trial: Not Set

Action Filed: December 13, 2024

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on Friday, April 4, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard before the Honorable André Birotte Jr., at the First Street U.S. Courthouse, 350 West First Street, Los Angeles, CA 90012 in Courtroom 7B, Defendants NBCUniversal Media, LLC ("NBCU") and Universal Pictures Home Entertainment LLC ("Universal Pictures") d/b/a GRUV.com (together, "GRUV") will and hereby do move this Court under Federal Rule of Civil Procedure 12(b)(6) for an order dismissing with prejudice Plaintiffs' First Amended Complaint, on the basis that the First Amended Class Action Complaint fails to state a claim upon which relief can be granted.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on January 22, 2025.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities filed in support, the Proposed Order, the pleadings and documents on file herein, and upon such oral and documentary evidence and matters that the Court may properly consider.

DATED: March 5, 2025

**ZWILLGEN PLLC**

By: */s/ Sheri Pan*
Sheri B. Pan (SBN 316136)
sheri@zwillgen.com

Attorney for Defendants
NBCUniversal Media, LLC and
Universal Pictures Home Entertainment LLC
d/b/a GRUV.com

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT ..... 1
II. FACTUAL BACKGROUND ..... 3
- A. GRUV's Business and Website ..... 3
- B. GRUV's Use of the Meta Pixel ..... 4

III. LEGAL STANDARD ..... 6
IV. ARGUMENT ..... 6
- A. Plaintiffs Do Not Allege the Disclosure of PII ..... 6
- B. Plaintiffs Are Not VPPA Consumers ..... 10
- C. Any Alleged Disclosure of PII was not Knowing ..... 14
  - 1. The FAC does not allege that GRUV knew or could have known the identifying information it allegedly disclosed ..... 14
  - 2. The FAC does not allege that GRUV had any way of knowing whether it caused the disclosure of a "purchaser's" PII ..... 17

V. CONCLUSION ..... 18

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 6

*Austin-Spearman v. AMC Network Ent. LLC,*
98 F. Supp. 3d 662 (S.D.N.Y. 2015) ........ 15

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ........ 6

*Cook v. GameStop, Inc.*,
689 F. Supp. 3d 58 (W.D. Pa. 2023) ........ 7, 8-9

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ........ 7, 8, 13, 16

*Ellis v. Cartoon Network, Inc.*,
803 F.3d 1251 (11th Cir. 2015) ........ 11, 12

*Ghanaat v. Numerade Labs, Inc.*,
689 F. Supp. 3d 714 (N.D. Cal. 2023) ........ 9-10

*Guenther v. Lockheed Martin Corp*.,
972 F.3d 1043 (9th Cir. 2020) ........ 18

*Hernandez v. Container Store, Inc.*,
No. 2:23-CV-05067, 2024 WL 72657 (C.D. Cal. Jan. 3, 2024) ........ 9

*In re Google Inc. Cookie Placement Consumer Priv. Litig*.,
806 F.3d 125 (3d Cir. 2015) ........ 15-16

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ........ 1, 7, 16

*In re Hulu Priv. Litig.*, No.
C 11–03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ........ 15

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) ........ *passim*

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 10

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
589 U.S. 178 (2020) .......... 18

*Martin v. Meredith Corp.*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023) .......... 9

*Popa v. PSP Grp., LLC,*
No. C23-0294JLR, 2023 WL 7001456 (W.D. Wash. Oct. 24, 2023) .......... 7-8

*Rodriguez v. JP Boden Servs. Inc.*,
No. 23-CV-00534, 2024 WL 559228 (S.D. Cal. Feb. 12, 2024) .......... 12-13

*Tawam v. Feld Ent. Inc.*,
684 F. Supp. 3d 1056 (S.D. Cal. 2023) .......... 11, 12

*United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*,
842 F.3d 430 (6th Cir. 2016) .......... 17

*United States v. Morris*,
928 F.2d 504 (2d Cir. 1991) .......... 17

*Yoder v. Ingersoll-Rand Co.*,
31 F. Supp. 2d 565 (N.D. Ohio 1997) .......... 16

**Statutes and Rules**

Fed. R. Civ. P. 8(a)(2) .......... 6

Fed. R. Civ. P. 12(b)(6) .......... 6

10 U.S.C. § 949p-5 .......... 16

15 U.S.C. § 6821 .......... 16

18 U.S.C. § 2710, et seq. .......... *passim*

**Other Sources**

S. REP. 100-599, *reprinted in* 1988 U.S.C.C.A.N. 4342 .......... 7

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants NBCUniversal Media, LLC ("NBCU") and Universal Pictures Home Entertainment LLC ("Universal Pictures") d/b/a GRUV.com (together, "GRUV") respectfully submit this memorandum of points and authorities in support of their motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. PRELIMINARY STATEMENT

This action is one of hundreds of putative class action lawsuits filed in the last several years alleging a website's use of a analytics and marketing tool known as the Meta Pixel violates the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). The VPPA—passed in 1988 after a brick-and-mortar video store gave a reporter a list of 146 movies Supreme Court nominee Robert Bork rented—is a narrow statute whose specific purpose is to protect the privacy of individual's video rental choices. *See In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 278, 288 (3d Cir. 2016) (noting the VPPA "serves different purposes, and protects different constituencies, than other, broader privacy laws"). Ignoring its limited purpose, plaintiffs' firms throughout the country have sought to slowly expand the VPPA into a catch-all privacy law that covers the sharing of *any* information even touching on video. The motivation is clear: plaintiffs' firms seek to use the ubiquity of video on the internet and the VPPA's high statutory damages to leverage hefty settlements from websites that have any type of video offering.

This action is yet another example of an attempt to extend the VPPA well beyond its bounds. Plaintiffs in this case seek to extend the VPPA's protections beyond website visitors who *actually* requested or obtained anything from GRUV, (an e-commerce website specializing in the sale of physical media) to visitors who may have been *considering* requesting or obtaining something from GRUV.

Plaintiffs allege that while browsing GRUV's website they selected unspecified "prerecorded videos" to add to their virtual shopping carts, and when

they did so the title of the video was shared with Meta via the Meta Pixel, along with their Facebook ID ("FID"). The First Amended Complaint ("FAC") posits that with this information, a person could locate Plaintiffs' Facebook profiles to see who they are and then attribute to them the titles of videos they added to their carts on the GRUV website. Plaintiffs allege that at some point *after* they added these videos to their carts (and after the alleged disclosure took place), they then purchased some or all of videos they had added to their cart. Based on these allegations, Plaintiffs demand statutory damages for a class consisting of every person with Facebook account who purchased a video on GRUV's website. But Plaintiffs' allegations do not (and cannot) give rise to VPPA liability.

First, the VPPA only governs the disclosures of "personally identifiable information" ("PII"). 18 U.S.C. § 2710(a)(3), (b)(1). To constitute statutory PII, the information at issue must show that a person has either "requested or obtained" specific video materials. The FAC does not make that allegation. While Plaintiffs contend their "add to cart" decisions amount to "requests," they are wrong. As their own allegations confirm, the only way to "request" a video from GRUV's website is to use the site's "checkout" feature. But Plaintiffs do not allege the GRUV checkout webpage contained the Meta pixel or otherwise triggered the disclosure of any PII (because it didn't). All the FAC alleges is that the user's decision to place a video in his or her virtual shopping cart was shared with Meta, which is not a "request" under the VPPA.

Second, the VPPA only applies to statutory "consumers" that rent, purchase, or subscribe to the prerecorded video content offered by a "video tape service provider." 18 U.S.C. § 2710(a)(1), (b)(1). Here, Plaintiffs' claims turn on the disclosure of activity—i.e., their "add to cart" actions—that occurred *before* they made any purchases. Because Plaintiffs were not "purchasers" when the alleged disclosures occurred, by definition they do not qualify as "consumers" under the VPPA.

Third, the FAC does not allege that GRUV "knowingly" disclosed Plaintiffs' identities to Meta. The FAC alleges that code on the GRUV website caused cookies stored on Plaintiffs' browsers to transmit Plaintiffs' FIDs to Meta. But nowhere does the FAC allege that GRUV knew or could access these FIDs in order to disclose them to Meta. Because GRUV cannot be charged with knowingly disclosing information it didn't have and couldn't access, there was no VPPA violation.

Fourth, even if GRUV knew that website visitor's FIDs *could* be transmitted to Meta, the FAC does not allege that GRUV "knowingly" disclosed the FIDs of statutory "consumers." As explained above, the FAC alleges that the GRUV website caused the disclosure of website activity that occurred before Plaintiffs purchased anything. Accordingly, at the time of the alleged disclosures, GRUV had no way of knowing whether the allegedly disclosed FIDs were or would become associated with a website "purchaser." As such, Plaintiffs do not allege that GRUV "knew" it was disclosing information relating to the video viewing choices of VPPA "consumers."

## II. FACTUAL BACKGROUND

### A. GRUV's Business and Website

GRUV's website, www.gruv.com, is an e-commerce site owned by Universal Pictures, that specializes in the sale of physical media like DVDs, Blu-rays, and 4K Ultra HD. FAC ¶¶ 16-18; 62. GRUV's website allows users to purchase various movies and television shows and have them physically delivered to their homes. *Id.* ¶ 81.

Like most e-commerce sites, GRUV's inventory is organized into various categories or pages—akin to aisles or departments in brick-and-mortar retailers. Visitors can browse this inventory by clicking on the various pages. While browsing visitors can select "ADD TO CART," to assemble items into a virtual shopping cart before proceeding to a checkout page. *Id.* ¶¶10, 14. Much like adding an item to a physical shopping cart while browsing a brick-and-mortar store, adding an item to a

virtual cart does not require the visitor to purchase the item; it simply saves the item in a central location for easy access, which allows the visitor to make purchase decisions later. Indeed, and like every other off- or online shopping cart, GRUV website visitors may view and/or modify the items in their cart at any point prior to checking out or simply leave the site while items remain in their cart without attempting to purchase those items.

After a visitor has added items to their virtual cart, they have the option of continuing to a "checkout screen." *Id.* ¶¶ 10, 14. There, visitors can elect to purchase some or all of the items in their shopping cart. *Id.* To complete a purchase, a visitor must provide their name, email address, billing address, and their payment information. *Id.* ¶ 63.

**B. GRUV's Use of the Meta Pixel**

The FAC alleges that at the time Plaintiffs visited GRUV's website, the website included the Meta Pixel, the "unique string of code" at the center of this dispute. *Id.* ¶ 47. The FAC alleges that when Plaintiffs added a video to their virtual cart, the Meta Pixel present on GRUV's website caused the disclosure of three pieces of information to Meta: (1) the title of the video they added to their cart, (2) the URL associated with that video, and (3) their Facebook ID ("FID"). *Id.* ¶¶ 67, 85.

The FAC describes the FID as "a unique and persistent identifier" Meta assigns to each of its Facebook users that in turn allows Meta to match website visitors to their Facebook accounts. *Id.* ¶ 48. The FAC alleges that entering "Facebook.com" into a web browser along with a given FID returns the Meta profile corresponding with the FID. *Id.* ¶ 4, 48.

The FAC alleges that Plaintiffs are registered users of Meta (Facebook) who visited GRUV's website. *Id.* ¶¶ 9, 11, 13, 15. Plaintiffs assert that when they selected specific videos and added those videos to their virtual shopping carts, GRUV's website caused the transmission of the title of those videos, any associated URLs, and their FIDs to Meta. *Id.* ¶¶ 10, 14. According to the FAC, after Plaintiffs

added videos to their carts, they proceeded to a "checkout screen" where they purchased some or all of the videos in their shopping carts by providing their name, email address, home address for shipment, and payment details. *See id.* Notably, unlike the original complaint, the FAC does not allege that the Meta pixel appeared on that "checkout" page or any subsequent pages that loaded as they made their purchases.[1]

Plaintiffs do not provide any details—not even a title—regarding the videos they allegedly added to their carts on GRUV's website. Nor do they indicate whether they purchased some or all of the videos that were added to their carts after they proceeded through the GRUV checkout webpage. Plaintiff Archer alleges that he went through the add-to-cart, checkout, and purchase process on one single date. *Id.* ¶ 10. Plaintiff Cohn alleges that he went through the process over two separate dates but does not allege whether he made two purchases (i.e., one on January 5th and another on the 9th), or whether he added videos to his cart on one day but then decided to complete that purchase a few days later. *Id.* ¶ 14. The only details the FAC offers on how the alleged disclosures occurred is an image of alleged "source code," showing Facebook cookies transmitting certain data, including a user's FID, to Meta. *Id.* ¶ 85. That image, however, is not associated with either Plaintiff's website interactions.[2]

---

[1] Plaintiff Archer's original complaint alleged that GRUV used the Meta Pixel "[d]uring the purchase process on [GRUV's] website" to "intentionally disclos[e] to Meta . . . the specific title of the prerecorded video materials that [Plaintiff] purchased." Dkt. 1 ¶¶ 62, 69. After counsel for defendants pointed out that allegation was factually inaccurate (because the Meta Pixel is not included on pages during the purchase process), Plaintiffs shifted to their present "add to cart" theory of liability.

[2] Rather, the Facebook ID shown in the "source code" image included in the complaint is associated with an individual named "Elliot O. Jackson," an attorney that works at the law offices of Hedin LLP. *See* Facebook Profile Page for Elliot O.

## III. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* The rule that a court accept as true allegations in a complaint is "inapplicable to legal conclusions," *id.*, and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task" that requires a court "to draw on its judicial experience and common sense." *Id.*

## IV. ARGUMENT

### A. Plaintiffs Do Not Allege the Disclosure of PII

The FAC fails first because it does not adequately allege the disclosure of statutory PII. Plaintiffs' VPPA claims turn on the alleged disclosure to Meta of video products they each added to an online shopping cart. But unlike a hypothetical disclosure of an actual video purchase or viewing (which is not alleged), disclosing Plaintiffs' "add to cart" actions does not disclose that they "requested or obtained" any "specific video materials" and is therefore not a disclosure of statutory PII.

The VPPA limits the disclosure of PII. 18 U.S.C. § 2710(b)(1). The statute defines PII as including "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Thus, "[f]or there to be an actionable VPPA violation, the

---

Jackson, www.facebook.com/100000510139278.

video provider must have knowingly disclosed: 1) a consumer's identity; 2) the identity of 'specific video materials'; and 3) the fact that the person identified 'requested or obtained' that material." *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015). This fits with Congress's explanation that the "definition [of PII] makes clear that personally identifiable information is intended to be transaction-oriented. It is information that identifies a particular person as having engaged in a specific transaction with a video tape service provider." S. REP. 100-599, at 12, *reprinted in* 1988 U.S.C.C.A.N. 4342-1, 4342–9. The plain text of the statute "does not restrict the disclosure of information other than personally identifiable information." *Id.* The Ninth Circuit has further construed PII to "mean[] only that information that would 'readily permit an ordinary person to identify a specific individual's video-watching behavior.'" *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (quoting *In re Nickelodeon*, 827 F.3d at 267).

Here, Plaintiffs' VPPA claims fail because they do not allege that GRUV disclosed any "transaction-oriented" information about videos they requested or obtained. Plaintiffs posit that GRUV's alleged disclosures about the materials Plaintiffs added to their virtual shopping carts count as "requests" for specific video materials. *See*, *e.g.*, FAC ¶¶ 83, 84 (alleging each Plaintiff "requested specific video materials from Defendants by clicking the 'add to cart' button on Defendants' gruv.com website to 'add' a prerecorded video selected . . . to his shopping cart") (cleaned up).) But the fact that an individual views a particular product's webpage or adds particular items to an online shopping cart are "no different from what [store] employees would have been able to observe if [the Plaintiffs] had gone into a brick-and-mortar store and began browsing the inventory." *Cook v. GameStop, Inc.*, 689 F. Supp. 3d 58, 66 (W.D. Pa. 2023), *appeal filed sub nom. Amber Cook v. GameStop Inc.*, No. 23-2574 (3d Cir. Aug. 29, 2023). The act of placing an item in a real or "virtual cart" is, "[a]t most, . . . information . . . related to [the Plaintiffs'] product preferences." *Id.*; *accord Popa v. PSP Grp., LLC,* No. C23-0294JLR, 2023

WL 7001456, at *4 (W.D. Wash. Oct. 24, 2023) (clicking on products "reveals nothing more than the products that interested [the plaintiff]").

These actions do not implicate the VPPA. Perusing an online catalogue of video titles is not "transaction-oriented" and does not evidence an actual request for a video. The VPPA does not prohibit a brick-and-mortar video store from disclosing that a particular customer came into the store, went down the "Drama" aisle, paused in front of 1988's smash hit "Big," or even picked that VHS tape off the shelf and placed it into a shopping cart or basket. The statute prohibits what happens at the register: if the customer checks out and the clerk hands a copy of "Big" to the customer, the store cannot disclose that the customer obtained the video he requested, even if the store does not know whether the customer ultimately watched the movie at home. 18 U.S.C. §§ 2710(a)(3), (b)(1). And if the store did not have copies of "Big" in stock, the VPPA *still* prohibits the store from disclosing the fact that the customer had made a request for the title. *Id.* But a person doesn't "request" anything by walking around a Blockbuster with a copy of "Big" in his or her shopping cart.

It is no different for online retailers like GRUV. *Eichenberger*, 876 F.3d at 985 ("[W]e are not persuaded that the 1988 Congress intended for the VPPA to cover circumstances so different from the ones that motivated its passage."). As the FAC acknowledges, if GRUV had configured the Meta Pixel to capture users' activity on its checkout page—i.e., the point at which users can make transactional requests for the videos of their choosing—the VPPA may be implicated. *See* FAC ¶¶ 10, 14 (alleging facts regarding the checkout flow for each Plaintiff). But while the original complaint incorrectly alleged as much, the FAC does not allege GRUV's checkout page disclosed any video-related information (because such allegation cannot be made in good faith). Until a customer reaches the point of making a transactional request—the equivalent of sidling up to the cash register at Blockbuster—they are just "browsing [GRUV's] inventory." *Cook*, 689 F. Supp. 3d

at 66. A disclosure that a person added a video title to a shopping cart might reveal information about a specific person and a video title, but it is missing anything showing a "request" for that video content. *In re Hulu Priv. Litig.*, 86 F. Supp. 3d at 1095. And while *GRUV* certainly knows that Plaintiffs *eventually* made requests for the video titles they placed in their virtual carts (i.e., because GRUV is the entity that completed those transactions and, thus, must both (i) receive its customers' requests and (ii) provide the requested materials before its customers can obtain them), the FAC alleges nothing suggesting that *Meta* or any other "ordinary person" could make that connection to identify Plaintiffs' "video-watching behavior." *Eichenberger*, 876 F.3d at 985. Indeed, as discussed below, even *GRUV* couldn't make that connection at the time of the alleged disclosures, given that they occurred before either Plaintiff had requested to purchase or purchased anything.

None of these considerations are affected by the many recent VPPA decisions addressing plaintiffs that accessed online videos. In nearly every one of those decisions, the plaintiff alleged that he or she accessed a webpage that included video content, and that the webpage's URL was disclosed to a third party. *See*, *e.g.*, *Hernandez v. Container Store, Inc.*, No. 2:23-CV-05067-HDV-RAO, 2024 WL 72657, at *1 (C.D. Cal. Jan. 3, 2024) (plaintiff alleging he watched a video "on Defendant's website" and his viewing history was disclosed via a "Page View Event[]")). While the parties in those cases have debated whether a disclosure of a URL is enough to show disclosure of a video appearing on a specific webpage, *see*, *e.g.*, *Martin v. Meredith Corp*., 657 F. Supp. 3d 277, 285 (S.D.N.Y. 2023), *appeal withdrawn*, 2023 WL 4013900 (2d Cir. May 24, 2023) (holding that "providing a URL associated with a video is [not] sufficient to state a VPPA claim"), or whether a plaintiff must actually view a specific video to assert a VPPA claim, *see*, *e.g.*, *Ghanaat v. Numerade Labs, Inc.*, 689 F. Supp. 3d 714, 721 (N.D. Cal. 2023) (rejecting argument that "viewing" a video is required under the VPPA), those cases all start with a plaintiff's request for a specific webpage that has video

content on it. In other words, each case involves a transaction for video content because to view a webpage a user must first request its contents from a host server. *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1101 (9th Cir. 2014) ("The 'basic unit of HTTP communication' is the message, which can be either a request from a client to a server or a response from a server to a client."). Here, in contrast, because the FAC does not allege that GRUV's website features any streaming video, Plaintiffs could not make a request for video content until they went through the checkout process and requested to purchase some or all of the materials in their shopping carts. And because the FAC does not allege that GRUV's checkout webpages disclose any video-related information to Meta, Plaintiffs do not (and cannot) allege a disclosure of PII to state a VPPA claim.

### B. Plaintiffs Are Not VPPA Consumers

For similar reasons the FAC also fails to adequately allege that Plaintiffs are VPPA "consumers." The VPPA only prohibits disclosures "concerning any consumer." 18 U.S.C. § 2710(b)(1). "Consumers" are defined as "any renter, purchaser, or subscriber of goods or services…"18 U.S.C. § 2710(a)(1). Here, while each Plaintiff alleges that he made a purchase from GRUV, neither alleges that a disclosure "concerning" his purchase or status as a purchaser occurred. Thus, the FAC does not allege GRUV disclosed PII "concerning any [GRUV] consumer" and, in turn, does not state a VPPA claim. 18 U.S.C. § 2710(b)(1).

Once again, a VPPA claim requires a disclosure of "three distinct elements . . . the consumer's identity; the video material's identity; and the connection between them." *In re Hulu Priv. Litig*., 86 F. Supp. 3d at 1095. As the *In re Hulu* court explained, "[t]he point of the VPPA, after all, is not so much to ban the disclosure of user or video data; it is to ban the disclosure of information connecting a certain user to certain videos." *Id.* Thus, if a covered entity discloses video viewing information that does not concern a statutory "consumer"—i.e., a "renter, purchaser, or subscriber" of a covered entity's video goods or services—that disclosure does not implicate the statute.

The Eleventh Circuit addressed this question directly in *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251 (11th Cir. 2015). There, the plaintiff had downloaded and used the defendant's mobile app to view videos, and alleged that the defendant had disclosed information about his video-viewing activity to a third party. *Id.* at 1253-54. He did not purchase or rent anything from the defendant, so he contended his use of the app made him "a 'subscriber' of Cartoon Network and therefore a [VPPA] 'consumer.'" *Id.* at 1254. But because the Eleventh Circuit held that the plaintiff's mere access of video content on the defendant's app did not make him a "subscriber" (because, *inter alia*, he did not allege any sort of durable relationship with the defendant), the Eleventh Circuit held that the alleged transmission of the plaintiff's video viewing records did not violate the VPPA because the plaintiff was not a VPPA "consumer." *Id.* at 1257. Put in the framework of *In re Hulu*, the plaintiff had alleged a disclosure of "video material's identity," but did not allege he was a statutory "consumer."

Here, even if the disclosed "add to cart" actions are "requests" under the VPPA (which they are not for the reasons discussed above), those disclosures do not "concern" VPPA consumers because they do not reflect any "existence of a factual nexus" to a video purchase, rental, or subscription. *Tawam v. Feld Ent. Inc.*, 684 F. Supp. 3d 1056, 1061 (S.D. Cal. 2023). As discussed above, the FAC describes a typical sequence of events for online shopping. While browsing on GRUV, Plaintiffs added videos to their cart. To subsequently purchase some or all of those videos, Plaintiffs would have navigated to a checkout screen, selected which materials they wanted to buy, and entered their "name, email address, home address for shipment, and payment details" to complete the transaction. FAC ¶¶ 10, 14, 83, 84. But the FAC is premised on alleged disclosures to Meta that occurred during the "add to cart" phase of this process—a step *before* any user makes a purchase. *Id.* ¶ 85. At the time these disclosures were made, then, the Plaintiffs had not purchased anything and were not VPPA "purchasers", and therefore not VPPA "consumers."

As discussed above, the Plaintiffs' decisions to add items to a virtual shopping cart are the same as a brick-and-mortar store's customer's decision to place items into a physical cart or basket. The customer might be thinking about making a purchase, and they even might go ahead and purchase some of the items in their cart. But they might not, and until they go to the register they have not done or even attempted to do so. Accordingly—and exactly like the status of the alleged disclosures of video viewing information in *Ellis*—the alleged disclosure of "add to cart" information does not implicate the VPPA because it is unconnected to Plaintiffs' purchases on GRUV's website.

The argument Plaintiffs seem to make is that even though the disclosures occurred *before* any purchases, the Plaintiffs' later-in-time purchases convert GRUV's otherwise innocuous "disclosure of . . . video data," *In re Hulu Priv. Litig.*, 86 F. Supp. 3d at 1095, to actionable VPPA violations. This misunderstands the VPPA: the timing of an alleged rental, purchase, or subscription is no trivial detail. To the contrary, it is central to determining whether a person is a VPPA "consumer" and thus whether the VPPA applies to any alleged disclosure. In other words, it is the actual *purchase, rental, or subscription* of video materials that qualifies a person as VPPA consumer, not actions that come before or afterwards. Accordingly, where a plaintiff becomes a VPPA consumer only *after* viewing video content and *after* a defendant allegedly discloses his viewing material to a third party, the VPPA does not apply. *See Tawam*, 684 F. Supp. 3d at 1062 (emphasis added) ("The . . . allegation that Plaintiffs only signed up for the email mailing list 'after viewing the videos' . . . undermines any inference of a subscriber relationship *at the time Plaintiffs viewed the videos*."). Similarly, if a plaintiff purchased something from a defendant *before* an alleged disclosure of video viewing activity but did not make a purchase in connection with the video-related activity, the VPPA does not apply either. *Rodriguez v. JP Boden Servs. Inc.*, No. 23-CV-00534-L-VET, 2024 WL 559228, at *3 (S.D. Cal. Feb. 12, 2024) (emphasis added) (rejecting argument that

plaintiff, who had previously made purchases from the defendant, was a VPPA purchaser because it was "unclear whether Plaintiff purchased any goods from the Boden site *at the time she viewed the video*").

This approach squares precisely with the Ninth Circuit's analysis of the VPPA in *Eichenberger.* There, the Court considered whether information being "identifying" under the VPPA turned on whether the "information [disclosed was] reasonably and foreseeably likely to reveal which ... videos [a person] has obtained" (the approach endorsed by the First Circuit) or whether the information must allow "an ordinary person to identify a [particular individual as having watched certain videos]" (the approach endorsed by the Third Circuit). *Eichenberger*, 876 F.3d at 985. In choosing the latter approach, the Ninth Circuit reasoned that the "ordinary person" standard conformed with the rest of the statute: because the statue only prohibits "knowing" disclosures, whether disclosed information implicates the VPPA should be determined "from the perspective of the disclosing party." *Id.* That is, at the moment an entity makes a disclosure, it should know then-and-there whether the VPPA applies, just as a brick-and-mortar rental store manager would understand that when a customer rents a video, *that* customer has VPPA rights with respect to *that* video. *Id.*

Plaintiffs' theory of liability conflicts with this basic framework. They posit that their after-the-fact conduct (i.e., their eventual video purchases, which were made *after* they added items to their virtual carts and *after* the alleged disclosure of that information occurred) made them "purchasers" and, thus, dictates whether the earlier-in-time disclosures implicated the VPPA. But as the Ninth Circuit explained in *Eisenberger*, that approach "would make the lawfulness of a disclosure depend on circumstances outside of a video service provider's control." *Id.* (cleaned up and citation omitted). Under Plaintiffs' theory, a business *cannot* know whether a disclosure implicates the VPPA at the time the disclosure is made because the subject of the disclosure might later purchase video materials from the defendant.

Because *Eichenberger*'s "ordinary person" cannot see into the future, GRUV cannot be liable for disclosures made about online activity that did not *at that time* involve a purchase on the website.

Plaintiffs were not GRUV purchasers (or renters or subscribers) when the alleged disclosures occurred and therefore were not statutory consumers.

**C. Any Alleged Disclosure of PII was not Knowing**

Even if the FAC adequately alleged Plaintiffs made a VPPA "request" or were GRUV "consumers" (it does neither), the FAC still fails because it does not allege a knowing disclosure of PII by GRUV.

The VPPA prohibits only "knowing" disclosures of PII. 18 U.S.C. § 2710(b)(1). To meet this requirement, Plaintiffs must plead facts sufficient to show that GRUV disclosed the *known* identity of a *known* purchaser. The facts alleged in the FAC do not meet this standard.

**1. The FAC does not allege that GRUV knew or could have known the identifying information it allegedly disclosed.**

Plaintiffs' theory of disclosure turns on the transmission of their FIDs to Meta. But even if code on GRUV's website caused Plaintiffs' browsers to disclose those FIDs, that is not enough to allege that GRUV knowingly disclosed Plaintiffs' FIDs to Meta.

As an initial matter, the FAC does not allege that GRUV knows *any information* about Plaintiffs when they added videos to their online carts and the alleged disclosures occurred. Rather, the Plaintiffs only provided certain identifying information—i.e., name, email address, home address, and payment details—on the checkout screen. FAC ¶¶ 10, 14, 63. More important for purposes of the FAC, Plaintiffs do not allege that GRUV *ever* knew or had access to their FIDs, the identifiers underlying the alleged VPPA disclosures at issue here.

To the contrary, the FAC explains that Plaintiffs' FIDs were contained in a Facebook cookie stored in and transmitted from their own browsers. To this end, the

FAC purports to provide a "snippet of source code" allegedly obtained from GRUV's website, which shows what happens when a user adds a video to cart:



```
▾Request Headers
:authority:          www.facebook.com
:method:             GET
:path:               /tr/?
                     id=195980562385522&ev=AddToCart&dl=https%3A%2F%2Fww
                     w.gruv.com%2Fproduct%2Fpuss_in_boots_the_last_wish_4k_ultr
                     a_hd_blu_ray_uhd%3Fsrsltid%3DAfmBOorqaAioqytURiDS2oYZt6
                     TUraMw6lixcd0IAxDCkbz-ej5aw-
                     Re&rl=&if=false&ts=1737582196242&cd[content_name]=Puss%2
                     0in%20Boots%3A%20The%20Last%20Wish%20(4K%20Ultra%2
                     0HD%20%2B%20Blu-
                     ray)%20%2BUHD%5D&cd[content_ids]=%5B30061%5D&cd[con
                     tent_type]=product&cd[value]=11.99&cd[currency]=AUD&sw=30
                     08&sh=1692&v=2.9.180&r=stable&ec=3&o=4126&fbp=fb.1.17375
                     68566619.383754379304443969&ler=empty&cdl=API_unavailab
                     le&it=1737582192987&coo=false&rqm=GET
:scheme:             https
Accept:              image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=
                     0.8
Accept-Encoding:     gzip, deflate, br, zstd
Accept-Language:     en-US,en;q=0.9
Cookie:              sb=rGRsZpSW69D4IZi9qx4k0LzD;
                     datr=rGRsZoBUTEgt8O28yyChli4h; c_user=100000510139278;
                     ar_debug=1; ps_n=1;
                     usida=eyJ2ZXliOjEslmlkljoiQXNvMnc0ZjFqOTV6cGliLCJ0aW1lljox
                     NzMzNDk4NjU1fQ%3D%3D;
                     fr=1kg8TPo9VYKSxcWYA.AWWieWXSOXzlZ7-
                     Vksa_4w2ST1o.Bnh-d0..AAA.0.0.Bnh-d0.AWV-VF0WeE4;
                     xs=73%3A6u-it7-vraU06Q%3A2%3A1718379704%3A-
                     1%3A2090%3A%3AAcX1Q-
                     nj6q6C_0eWHsLGCc20gEu05njBoGn4HhaiRlo
```

*Id.* ¶ 85. What the image actually shows is a report of activity from a user's web browser (as opposed to an analysis of GRUV's server traffic). The figure highlights a reference to the "c_user" cookie, which is owned by Meta and stores a Facebook user's FID. This image is not enough to impute knowledge onto GRUV, however, because GRUV has no way of accessing *Facebook's* c_user cookie. *In re Hulu Priv. Litig.*, No. C 11–03764 LB, 2014 WL 1724344, at *4 (N.D. Cal. Apr. 28, 2014) (citation omitted) ("The only servers that can access a particular cookie are those associated with the domain that wrote the cookie. That means that [a website] can read only [its own] cookies, and it cannot read . . . facebook.com cookies."). Various federal decisions have made similar observations, including cases relying on disclosures of consumers' FIDs. *See Austin-Spearman v. AMC Network Ent. LLC,* 98 F. Supp. 3d 662, 664 (S.D.N.Y. 2015) ("In particular, through its 'c_user' cookie, Facebook's code allegedly forces a user's web browser to look for the user's Facebook ID."); *see also In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 143 (3d Cir.

2015) (communications through browser internet cookies were between the user and the defendants).

Because Plaintiffs do not and cannot allege that GRUV knew or could access their FIDs, GRUV cannot be charged with disclosing such information. *See Eichenberger*, 876 F.3d at 986 (rejecting VPPA claim where the defendant "never disclosed and apparently never even possessed" the information that would allow a third party to identify an individual); *see also Yoder v. Ingersoll-Rand Co*., 31 F. Supp. 2d 565, 571 (N.D. Ohio 1997) ("It is a logical impossibility for a party intentionally to disclose information that it does not know it has."), *aff'd*, 172 F.3d 51 (6th Cir. 1998).

Nor can GRUV be liable merely because it installed the Meta Pixel on its website that in turn "caused" the disclosure of Plaintiffs' FIDs. "Causing" a disclosure is not actionable under the VPPA: when Congress wants to prohibit "causing" a disclosure—rather than making one directly—it says so explicitly. *See, e.g.,* 15 U.S.C. § 6821 (prohibiting any person to "cause to be disclosed . . . customer *information of a financial institution*") (emphasis added); 10 U.S.C. § 949p-5 ("accused reasonably expects to disclose, or to cause the disclosure of, classified information"). Congress used no such language here, as it was not concerned with unintentional, passive disclosures when it passed the VPPA. Rather, as both the Ninth and Third Circuits have observed, it was concerned with the limited problem of intentional *knowing* revelations like the one that "motivated [the VPPA's] passage"—a video store clerk handing a list of videos Judge Bork rented to a reporter. *See In re Nickelodeon*, 827 F.3d at 284; *Eichenberger*, 876 F.3d at 985 ("[W]e are not persuaded that the 1988 Congress intended for the VPPA to cover circumstances so different from the ones that motivated its passage.").

### 2. The FAC does not allege that GRUV had any way of knowing whether it caused the disclosure of a "purchaser's" PII

Finally, even if Plaintiffs were considered VPPA "purchasers" (and therefore "consumers") at the time GRUV allegedly disclosed information about their add-to-cart actions (which they were not, as discussed *supra* § IV.B), the FAC does not allege that GRUV knew it was disclosing information about a statutory "consumer." 18 U.S.C. § 2710(b)(1).

The VPPA's private right of action allows suit against a video tape service provider that "knowingly discloses, to any person, personally identifiable information concerning any consumer." 18 U.S.C. § 2710(b)(1). The VPPA's plain text thus requires the provider have knowledge both that PII is being disclosed and that it concerns a subscriber. *See United States v. Morris*, 928 F.2d 504, 507 (2d Cir. 1991) ("[W]ith many statutes, a mental state adverb adjacent to initial words has been applied to phrases or clauses appearing later in the statute without regard to the punctuation or structure of the statute."); *see also United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 842 F.3d 430, 436-37 (6th Cir. 2016) (distributing "knowingly" across both elements of the reverse-false-claims provision of the False Claims Act). As used in the VPPA, "the term 'knowingly' connotes actual knowledge." *In re Hulu*, 86 F. Supp. 3d at 1095.

Plaintiffs cannot allege that GRUV had actual knowledge that it was disclosing information concerning a "purchaser" because, as discussed above, Plaintiffs were not yet purchasers when their PII was allegedly disclosed. The FAC alleges only that GRUV knew that the Meta Pixel would cause the transmission of the titles of videos Plaintiffs added to their virtual cart, the associated URLs, and their FIDs (for those visitors that were also members of Facebook). FAC ¶ 88. But Plaintiffs do not allege that GRUV had any way of knowing whether Plaintiffs were "consumers" when they added videos to their carts. To the contrary, Plaintiffs' "prior to purchase" theory of

liability proves that GRUV could *not* possibly have known that information. At the time the disclosures took place, the FAC does not allege GRUV had any way of even knowing who Plaintiffs are, much less that at some later point in time they would decide to make a purchase on the website. *Eichenberger*, 876 F.3d at 985 ("18 U.S.C. § 2710(b)(1) focuses on what information a video service provider 'knowingly discloses.' In other words, the statute views disclosure from the perspective of the disclosing party.")

Without knowledge that a user browsing GRUV's website and adding items to a virtual cart is, in fact, a "purchaser" there can be no knowing disclosure under the VPPA's plain text. *See In re Hulu*, 86 F. Supp. 3d at 1095 ("'[K]nowingly' means consciousness of transmitting the private information. It does not merely mean transmitting the code."). Plaintiffs at best allege that if someone adds a video to cart, GRUV knows that the person *might* become a purchaser—i.e., if they decide to move to the checkout screen, enter the required information, and then commit to a purchase for some or all of the items in their shopping cart. But such "potential, possible, virtual, conceivable, theoretical, hypothetical, or nominal" knowledge is not "actual" knowledge as required under the VPPA. *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 184-85 (2020) (observing "[l]egal dictionaries give actual knowledge the same meaning: real knowledge as distinguished from presumed knowledge or knowledge imputed to one") (cleaned up); *see also Guenther v. Lockheed Martin Corp.*, 972 F.3d 1043, 1054 (9th Cir. 2020) (distinguishing "actual knowledge" from "lower knowledge thresholds" such as "presumed" or "implied" knowledge). The FAC fails to allege that GRUV "knowingly" disclosed Plaintiffs' PII.

## V. CONCLUSION

For the forgoing reasons, GRUV respectfully requests that the Court enter an order dismissing Plaintiffs' Amended Complaint in its entirety.

Dated March 5, 2025

**ZWILLGEN LAW LLP**

By: /s/ Sheri Pan
Sheri Pan (SBN 316136)
Email: sheri@zwillgen.com

*Attorney for Defendants NBCUniversal Media, LLC and Universal Pictures Home Entertainment LLC d/b/a GRUV.com*