1  Sheri Pan (SBN 316136)
2  sheri@zwillgen.com
   ZWILLGEN LAW LLP
3  369 Pine Street, Suite 506
4  San Francisco, CA 94104
   Telephone: (415) 230-5941
5
6  Michael Bleicher (SBN 313892)
   michael.bleicher@zwillgen.com
7  ZWILLGEN PLLC
   1900 M Street NW, Suite 250
8  Washington, DC 20036
9  Telephone: (202) 706-5251
   Facsimile: (202) 706-5298
10
11 *Attorneys for Defendants*
   *NBCUniversal Media, LLC and*
12 *Universal Pictures Home Entertainment*
13 *d/b/a GRUV.com*

14
## UNITED STATES DISTRICT COURT
15
## CENTRAL DISTRICT OF CALIFORNIA
16

| | |
|---|---|
| 17  MICHAEL ARCHER; and TODD COHN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NBCUNIVERAL MEDIA, LLC and UNIVERSAL PICTURES HOME ENTERTAINMANT, d/b/a GRUV.COM,<br><br>Defendants. | Case No. 2:24-CV-10744-AB-JC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>District Judge: Hon. André Birotte Jr.<br>Hearing Date: May 2, 2025<br>Hearing Time: 10:00 AM<br>Court Room: 7B<br><br>Action Filed: December 13, 2024 |

# **TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................... 1

II. ARGUMENT .................................................................................................. 2

    A.    Plaintiffs Don't Attempt To Show that the GRUV Website Collected PII. ........................................................................................ 2

    B.    Plaintiffs Are Not VPPA Consumers With Respect to the Alleged Disclosures At Issue Here. ..................................................... 5

    C.    The FAC Does Not Allege That GRUV Knowingly Disclosed Purchasers' PII. ................................................................ 9

III. CONCLUSION ............................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cook v. GameStop, Inc.*,
    689 F. Supp. 3d 58 (W.D. Pa. 2023) ............................................................. 3-4

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017) ............................................................. 3, 4, 8, 9

*Ellis v. Cartoon Network, Inc.*,
    803 F.3d 1251 (11th Cir. 2015) ................................................................. 6

*Hernandez v. Container Store, Inc.*,
    2024 WL 72657 (C.D. Cal. Jan. 3, 2024) ........................................................ 7

*In re Hulu Privacy Litigation*,
    86 F. Supp. 3d 1090 (N.D. Cal. 2015) ........................................................ 4, 6

*Intel Corp. Inv. Pol'y Comm. v. Sulyma*,
    589 U.S. 178 (2020) ........................................................................ 11

*Rodriguez v. JP Boden Servs. Inc.*,
    2024 WL 559228 (S.D. Cal. Feb. 12, 2024) ..................................................... 8

*Salazar v. Paramount Glob.*,
    2025 WL 1000139 (6th Cir. Apr. 3, 2025) ..................................................... 6, 7

*Shapiro v. Peacock TV*,
    2025 WL 968519 (S.D.N.Y. Mar. 31, 2025) ................................................ 2-3, 4, 5

*Tawam v. Feld Entertainment Inc.*,
    684 F. Supp. 3d 1056 (S.D. Cal. 2023) ..................................................... 6, 7, 8

**Statutes**

Video Privacy Protection Act, 18 U.S.C. § 2710 ................................................... 1

18 U.S.C. § 2710(a)(1) ..................................................................... 1, 5, 6

18 U.S.C. § 2710(a)(3) ........................................................................ 2, 9

18 U.S.C. § 2710(b)(1) .......................................................... 1, 2, 5, 6, 7, 8, 10

**Other Authorities**

S. Rep. No. 100-599 (1988)................................................................................2-3

## I. INTRODUCTION

By its terms, the Video Privacy Protection Act, 18 U.S.C. § 2710 (the "VPPA") prohibits covered businesses from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider[.]" 18 U.S.C. § 2710(b)(1). Plaintiffs Michael Archer and Todd Cohn do not allege Defendants NBCUniversal Media, LLC or Universal Pictures Home Entertainment (together, "GRUV") disclosed information about any purchase Plaintiffs made on www.gruv.com (the "Website"). As GRUV explained in its now-pending motion to dismiss, (dkt. 25 (the "Motion")), those basic facts put Plaintiffs far outside the VPPA. They do not allege the disclosure of statutory personally identifiable information ("PII"), they do not allege they are covered "consumers," and they do not allege GRUV knowingly disclosed anything actionable.

Plaintiffs' opposition, (dkt. 31 (the "Opposition")), engages in a healthy serving of name-calling, but identifies no reason why their single-count complaint should survive dismissal. On the "PII" issue, Plaintiffs emphasize that the disclosures alleged in the First Amended Complaint (dkt. 19 (the "FAC")) are generally "about" the video materials on the Website and are linked to the Plaintiffs personally. But they fail to ground this argument in the VPPA. To state a claim, Plaintiffs must allege a personally identifiable disclosure about a video *purchase* they made on GRUV's Website, but all they allege are disclosures about their browsing activity. As a recent VPPA decision specifically held, those disclosures do not implicate the statute even if they are browsing information related to (or "about") videos.

On the "consumer" issue, Plaintiffs point out the obvious fact that they *did* make purchases on GRUV's Website and then chide GRUV for reading in a "timing" requirement to Section 2710(a)(1). Neither argument hits its mark. Plaintiffs *do* allege they made purchases on the Website – just not at the time the alleged disclosures occurred. Thus, Plaintiffs do not allege any disclosures "concerning" a VPPA

1

"consumer." That is not a new "timing" requirement; it is straightforward application of Section 2710(b)(1)'s text.

On the "knowing disclosure" issue, Plaintiffs make more admissions than argument. They admit that the disclosures at issue here were made by their browsers – not GRUV. They admit that GRUV had no way of knowing which of its visitors' browsers stored the Facebook cookies required to facilitate those disclosures. And they admit that their later-in-time purchases didn't "magically convert" (their words, not ours) their pre-purchase browsing activity on the Website to purchases. As such, they all but confirm that GRUV could not have knowingly disclosed the identifier at issue here (the Facebook ID or "FID") or known that any disclosures concerned VPPA "consumers."

No VPPA case has ever proceeded on the legal theory Plaintiffs allege here. For good reason: their theory does not even remotely track what the statute requires. This case should be dismissed.

## II.   ARGUMENT

### A.   Plaintiffs Don't Attempt To Show that the GRUV Website Collected PII.

Section 2710(a)(3) of the VPPA defines PII as information that identifies a consumer as "having requested or obtained specific video materials" from a video tape service provider. In its Motion, GRUV argued that because the alleged disclosures at issue here – which revealed that each Plaintiff added one or more video materials to a virtual shopping cart – do not implicate any of Plaintiffs' actual or attempted purchases, the FAC does not allege the disclosure of statutory PII. While this is a straightforward question of statutory interpretation, Plaintiffs do everything they can to avoid addressing it directly. Probably with good reason; it shows that their central theory of liability is a poor fit for the VPPA, which "is intended to be narrowly circumscribed to '*specific transactions*'" and not the browsing information that Plaintiffs allege was disclosed here. *Shapiro v. Peacock TV*, No. 23-CV-6345 (KMK),

2

2025 WL 968519, at *9 (S.D.N.Y. Mar. 31, 2025) (emphasis added) (quoting S. Rep. No. 100-599, at 12) (1988)).

The closest Plaintiffs come to addressing this issue is their suggestion that because their add-to-cart actions were about specific videos in a general sense, the VPPA is implicated. (*See* Opp'n at 9 n.1.) But as the *Shapiro* court just held, that approach does not track the VPPA's statutory language. In *Shapiro*, the plaintiffs argued that disclosures about "lists of episodes" they viewed—which, much like GRUV's online catalogue, related to video content they *could* obtain on the defendant's streaming service—implicated the VPPA. 2025 WL 968519, at *8. While the court noted that Congress could have defined PII to include "anything that is 'related to' video," it instead worded the statute "to be narrowly circumscribed to 'specific transactions.'" *Id.* at *8-9 (citation omitted). In support, and as the Ninth Circuit recognized in *Eichenberger*, the *Shapiro* court reasoned that when the VPPA was enacted, "the kind of 'transaction' Congress would have envisioned was one which occurred in a brick-and-mortar store . . . [which] were likely [video] rentals and purchases." *Id.* at *9 (quoting *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017)). Given the statute's text, purpose, and history, the *Shapiro* court had no problem holding that the plaintiff's allegations fell outside of the statute:

> [T]he subscriber behavior alleged by Plaintiffs—looking through a list of available episodes of a show—is less like renting or buying a video at a brick-and-mortar store, and more like browsing through a particular aisle of said store: subscribers look through a list of available titles and decide whether they then are interested in "requesting or obtaining" them.

*Id.* Because there is nothing in the statute's text or history to support "that browsing was likely to have been the kind of 'specific transaction' Congress envisioned while drafting the VPPA," *Shapiro* held that the plaintiffs' VPPA theory was "too expansive to fall within the meaning of the statute." *Id.*

This is the exact point GRUV made in its Motion, and also shows why Plaintiffs misunderstand the relevancy of cases like *Cook v. GameStop, Inc.*, 689 F.

3

Supp. 3d 58 (W.D. Pa. 2023), *appeal filed sub nom. Amber Cook v. GameStop Inc.*, No. 23-2574 (3d Cir. Aug. 29, 2023). Analogous to the issues discussed in *Shapiro*, GRUV cited *Cook* to emphasize the difference between "browsing" and "purchasing": the former might provide insight into a person's product preferences, but the latter concerns specific transactions. (Mot. at 7-8.) For the purposes of the VPPA, the difference isn't whether Plaintiffs' "browsing" habits might be attributed to them personally via the FID disclosures alleged in the FAC, as Plaintiffs argue. (Opp'n at 8-9 (discussing how the alleged GRUV disclosures "connect customer's identity to the videos requested"); *see also id.* at 12 (discussing same issue with respect to *In re Hulu Privacy Litigation*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015).) Rather, the question is what category of data – mere browsing or specific transactions such as a purchase – is covered? As *Shapiro* explains, the VPPA addresses the latter but not the former. The VPPA is not concerned with whether GRUV, Meta, or anyone else can personally link the Plaintiffs to their browsing activities – whether done in a brick-and-mortar retail shop, on the Peacock streaming website, or in GRUV's online store. Unless Plaintiffs made a *purchase* transaction, there is no PII. To put this in the context of Plaintiffs' references to *Eichenberger*, it is impossible to "identify a specific individual's video-watching behavior" if that individual has not obtained or attempted to obtain a video to watch. *Eichenberger*, 876 F.3d at 985 (citation omitted). Because the disclosures alleged here do not concern any purchases or attempted purchases, they are not PII for the purposes of the VPPA.

  Plaintiffs' remaining arguments do not track the pleadings or the statute. For example, they include off-hand comments like "the information [GRUV] transmitted to Meta Pixel *would* reveal the connection between the consumer and the video titles they requested or purchased." (Opp'n at 10 (emphasis in original).) But Plaintiffs do not allege any transactional information (i.e., "purchases") was disclosed, so this point is either not supported by the pleadings or relates to the same "add-to-cart" action, which, as discussed above, has no relevance to the VPPA. (Mot. at 7-8.) Their

4

*original* complaint did allege that *purchase* decisions were disclosed – but that pleading and its purchase-linked allegations were withdrawn because they were not true: GRUV does not disclose any purchase details to Meta.

The Plaintiffs also include a brace of footnotes analogizing GRUV's alleged use of the Meta Pixel to creepy in-store surveillance methods. (Opp'n at 11 n.2 & n.3.) While the Plaintiffs' characterizations are rich in hyperbole, they have no bearing on the statutory limits of the VPPA, which only address disclosures regarding consumers' transactional requests for video materials. *Shapiro*, 2025 WL 968519, at *9 (non-transactional interaction "is analogizable to browsing at a store, and there is no legislative history suggesting that browsing was likely to have been the kind of 'specific transaction' Congress envisioned while drafting the VPPA"). Because Plaintiffs do not allege that GRUV disclosed any information about their *purchase transactions*, the VPPA does not apply.

### B. Plaintiffs Are Not VPPA Consumers With Respect to the Alleged Disclosures At Issue Here.

The Opposition also does not overcome Section 2710(a)(1)'s limits on who can sue under the VPPA. The Act only applies to "consumers," who are defined as individuals that have rented, purchased, or subscribed to a VTSP's video goods or services. 18 U.S.C. § 2710(a)(1). GRUV's Motion argues that because the alleged disclosures here occurred *before* Plaintiffs purchased anything, they are not VPPA "consumers" and, thus, cannot state a claim under the Act. (Mot. at 10.) Under the text of the statute, the disclosures alleged did not "concern[] any [GRUV] consumer." 18 U.S.C. § 2710(b)(1). Plaintiffs offer a hodgepodge of responses to this straightforward reading of the VPPA's text. None are effective.

Initially, Plaintiffs note that both Archer and Cohn *did* purchase video materials from GRUV and, thus, are VPPA "consumers." (Opp'n at 10-11.) That is of course true – but Plaintiffs miss the point of GRUV's argument. By its terms, the VPPA only applies to disclosures "*concerning*" statutory consumers. 18 U.S.C. § 2710(b)(1)

5

1  (emphasis added). That was the reason for GRUV's references to cases like *In re Hulu Privacy Litigation*, 86 F. Supp. 3d at 1095, and *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir. 2015): those cases stand for the straightforward point that a video-related disclosure does not implicate the VPPA *unless* it concerns a statutory "consumer." Here, Plaintiffs allege that the Meta Pixel active on GRUV's website caused the transmission video-related information about them to Facebook, but at the time those disclosures occurred neither Plaintiff had rented, purchased, or subscribed to anything. (Mot. at 11; 18 U.S.C. § 2710(a)(1), (b)(1).) Thus, when Meta received the alleged information about Plaintiffs' add-to-cart activities, it did not receive any information concerning a VPPA "consumer." As *In re Hulu* and *Ellis* support, the VPPA is not implicated.

These same considerations address Plaintiffs' discussion about whether the FAC alleges a factual nexus between (i) their purchases and (ii) a defendant's *video* "goods or services." (Opp'n at 14-15.) At the outset, Plaintiffs push back on whether Section 2710(a)(1) of the VPPA requires that plaintiff allege a factual connection between his rental, purchase, or subscription and a defendant's video goods or services, as recognized in *Tawam v. Feld Entertainment Inc.*, 684 F. Supp. 3d 1056, 1061 (S.D. Cal. 2023). For example, they say no appellate court has imposed such a requirement. (Opp'n at 15.) They are wrong: the Sixth Circuit held that a VPPA consumer must allege that he rented, purchased, or subscribed to a defendant's video goods or services to state a claim. *Salazar v. Paramount Glob.*, No. 23-5748, 2025 WL 1000139, at *6 (6th Cir. Apr. 3, 2025). Plaintiffs also say that there are no VPPA cases addressing the nexus requirement in cases involving purchasers, as opposed to subscribers. (Opp'n at 15.) That point is woefully shortsighted. As every court to address the issue has explained, this interpretative exercise addresses VPPA *consumers*, which, as Section 2710(a)(1) explains, applies equally to renters, purchasers, *and* subscribers. *See, e.g., Salazar*, 2025 WL 1000139, at *5. A VPPA "subscriber" must allege he subscribed to a defendant's video goods or services

6

exactly like a "purchaser" must allege he purchased a defendant's video goods or services. Because *Tawam*, *Salazar*, and a "litany" of other decisions addressing this issue pertain to statutory *consumers* (and not "subscribers" in particular), they all bear equally on the allegations at issue here. *Hernandez v. Container Store, Inc.*, No. 2:23-CV-05067-HDV-RAO, 2024 WL 72657, at *3 (C.D. Cal. Jan. 3, 2024) (referencing "the litany of [VPPA] decisions recognizing a nexus requirement").

Plaintiffs also contend that even if a nexus requirement exists, "one is . . . clearly alleged in this case." (Opp'n at 15.) This again misses the mark. Plaintiffs base their position on the disclosure of "information about what items Plaintiffs add to their shopping carts, and detailed information revealing the titles requested [through that process]." (*Id.*) But as discussed *supra* and expressly alleged in the FAC, all of these add-to-cart actions are distinct from any *purchases* that Plaintiffs might (or might not) have eventually made on the GRUV Website. The VPPA allows *purchasers* (or renters or subscribers) to sue—not "browsers" of a defendant's video products. Because the disclosures at issue here do not concern Plaintiffs' actions *as purchasers*, they do not concern Plaintiffs' VPPA "consumer" relationship with GRUV.

Next, Plaintiffs accuse GRUV of "rewrit[ing] the definition of 'consumer' by adding a time constraint to the definition when there is none." (Opp'n at 15.) The argument does not hold together. GRUV does not lobby for a "time constraint"; it seeks to apply the VPPA as written. The statute could not be more straightforward on this point: if a business has information about a customer's video rental, purchase, or subscription transaction, the VPPA prohibits disclosures of that transaction unless a statutory exception applies. 18 U.S.C. § 2710(b)(1) (liability attaches where a "video tape service provider . . . knowingly discloses, to any person, personally identifiable information *concerning any consumer* of such provider") (emphasis added). If a business has information about a *potential* customer's *non-transactional* information—such as, here, certain titles an individual might be interested in—the VPPA does not regulate any associated disclosures because they would not "concern[]

7

any consumer of [that] provider." *Id.* As *Tawam* and *Rodriguez v. JP Boden Services Inc.* support, if a plaintiff is not a statutory "consumer" for a given interaction, a defendant's disclosures about that interaction do not implicate the VPPA. *Tawam*, 684 F. Supp. 3d at 1062 (emphasis added) ("The . . . allegation that Plaintiffs only signed up for the email mailing list 'after viewing the videos' . . . undermines any inference of a subscriber relationship *at the time Plaintiffs viewed the videos*."); *Rodriguez v. JP Boden Servs. Inc.*, No. 23-CV-00534-L-VET, 2024 WL 559228, at *3 (S.D. Cal. Feb. 12, 2024) (plaintiff was not a VPPA consumer when it was "unclear whether Plaintiff purchased any goods from the Boden site at the time she viewed the video").

Plaintiffs similarly misapprehend GRUV's citation to *Eichenberger*. (Opp'n at 17-18.) True enough, the Ninth Circuit's decision in *Eichenberger* addressed and developed the "ordinary person" test for statutory PII. (*Id.* at 17.) But as GRUV explained, the Ninth Circuit's analysis *starts* with Section 2710(b)(1), which "focuses on what information a video service provider 'knowingly discloses'" and, in turn, means that the VPPA "views disclosure from the perspective of the disclosing party." *Eichenberger*, 876 F.3d at 985 (quoting 18 U.S.C. § 2710(b)(1)). That statutory provision moreover establishes the VPPA's knowledge requirement for *both* the PII *and* consumer elements. From GRUV's perspective, then, at the moment a visitor to the Website adds an item to his or her shopping cart—the point that the FAC alleges a Meta disclosure occurs, (FAC ¶ 67)—GRUV has no way of knowing whether that visitor will decide to (i) remove the item, (ii) buy it, or (iii) leave it in their cart and never return to the Website again. Accordingly, at that moment and "from the perspective of the disclosing party" the visitor has *not* made a purchase, is *not* a VPPA consumer, and, in turn, is *not* protected by the statute. *Eichenberger*, 876 F.3d at 985. And while a visitor's decision to eventually make a purchase *is* protected by the VPPA—i.e., because at the time of that person's purchase GRUV knows that, *inter alia*, the visitor is a "purchaser" (and, thus, a VPPA consumer)—Plaintiffs do not allege information about that transaction was disclosed. In Plaintiffs' own words, their

8

case is about the "innocuous," pre-purchase interactions they had with the GRUV Website, and their eventual decisions to make purchases don't "magically convert" GRUV's alleged disclosures of such interactions into "actionable PII." (Opp'n at 18.)

### C. The FAC Does Not Allege That GRUV Knowingly Disclosed Purchasers' PII.

Finally, the Opposition does not overcome the FAC's failures to allege either (i) that GRUV knowingly disclosed Plaintiffs' FIDs, or (ii) that in doing so, GRUV knew that it was disclosing information specific to a "purchaser."

Plaintiffs open with a strawman argument. Specifically, they devote several paragraphs to arguing that an FID satisfies *Eichenberger's* "ordinary person" test for statutory PII. (Opp'n at 19-20.) But GRUV does not contend that an FID is not—or, at least, cannot be— "personally identifying" for the purposes of Section 2710(a)(3). As such, Plaintiffs' analysis is irrelevant. Instead, GRUV made a simpler point: Plaintiffs do not allege any way that GRUV knew or could have accessed their FIDs to begin with and, as such, they cannot credibly charge GRUV with "knowingly disclosing" that information, as required by the VPPA. (Mot. at 14-16.)

Next, Plaintiffs argue that even if GRUV could not access their FIDs, it can still be liable for knowing that their FIDs were being transmitted. (Opp'n at 20.) This assertion again misses the point: one cannot logically be charged with disclosing information that it never possessed. (Mot. at 16; *see Eichenberger*, 876 F.3d at 986.) Indeed, Plaintiffs sidestep that their FIDs are disclosed by a cookie owned by Meta that sits on their own browsers—one that GRUV did not and cannot access. GRUV does not argue that it did not "sift through" the data before transmitting it to Meta; rather, GRUV argues that it never knew or had access to the data to begin with. (Opp'n at 22.) To be sure, Plaintiffs eventually concede this point, given their acknowledgment that GRUV was "unable to access" the FIDs stored in the cookies on their browsers. (*Id.* at 20.) That should mark the end of this issue.

Instead of contesting that GRUV had actual knowledge of or access to their FIDs (it did not), Plaintiffs ask the Court to infer knowledge based on Meta documentation that explains that the Pixel could be configured to transmit various pieces of "'contact information,' . . . [including] 'information that personally identifies individuals, such as names, email addresses, and phone numbers.'" (Opp'n at 21.) This argument is a red herring. Plaintiffs do not and cannot allege that GRUV configured the Meta Pixel to transmit "contact information" from the Website's "add to cart" page. While the FAC alleges Plaintiffs provided identifying information—i.e., name, email address, home address, and payment details—at the checkout screen, they *do not allege* GRUV used the Meta Pixel on that page. (FAC ¶¶ 10, 14, 63.) (Again, Plaintiffs *did* make that allegation in their original complaint but withdrew it after amending.) In short, Plaintiffs nowhere allege that GRUV knew or could know any "contact information" about Plaintiffs when they added videos to their cart, let alone the kind of contact information identified in the Opposition. (*Id.* ¶¶ 10, 14, 63.) The only information that Plaintiffs allege was transmitted are titles of videos Plaintiffs added to their virtual cart, the associated URLs, and their FIDs. (*Id.* ¶ 88.) Because they concede GRUV could not access their FIDs, their argument fails. (Mot. at 15.)

Finally, Plaintiffs accuse GRUV of attempting to "graft onto the VPPA" the requirement that GRUV knows it is disclosing PII of a *consumer*, which Plaintiffs argue is "not found in the language of the act [or] any caselaw." (Opp'n at 23.) Plaintiffs should read the statute more carefully: Section 2710(b)(1) only extends liability to a video tape service provider who "knowingly discloses, to any person, personally identifiable information *concerning any consumer*." 18 U.S.C. § 2710(b)(1) (emphasis added). Knowledge that the allegedly disclosed PII concerns a statutory consumer is explicitly required by the language of the act. (*See* Mot. at 17-18.)

Plaintiffs cannot solve this shortcoming with their argument that GRUV "installed the Meta Pixel on [the] websites fully aware that it would unlawfully

transmit information on *all* [the] Facebook-enrolled visitors" regardless of "who would end up buying something." (Opp'n at 23 (emphasis in original).) The argument fails for several reasons. Foremost, it misses that at the time Plaintiffs were adding items to their cart (i.e., when the alleged disclosures occurred) they had by definition *not* purchased anything, were *not* purchasers, and, in turn, GRUV could not have known whether they were VPPA "consumers" because they were not. *See supra* § II.B. Plaintiffs cannot impute knowledge to GRUV based on the yet-to-happen activities of its users. At best, Plaintiffs allege that GRUV should have known that a visitor who adds a video product to their cart, may, at some point in the future become a purchaser. But again, such "potential, possible, virtual, conceivable, theoretical, hypothetical, or nominal" knowledge is not "actual" knowledge. *Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 589 U.S. 178, 184-85 (2020) (citation omitted). Thus, Plaintiffs allege no facts satisfying the VPPA's "knowing" requirement.

## III.   CONCLUSION

Despite amending once already, the FAC comes nowhere close to stating a VPPA claim. Plaintiffs have made clear that they cannot do so. GRUV's Motion should be granted and Plaintiffs' VPPA claim should be dismissed with prejudice.

Dated  April 14, 2025                    ZWILLGEN LAW LLP

By: */s/ Sheri Pan*
    Sheri Pan (SBN 316136)
    Email: sheri@zwillgen.com